# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GLADYS GARCIA and ELSA MAYOR, on behalf of      Case No. 17-cv-03671 (FB)(SJB)
themselves and others similarly situated,

                             Plaintiffs,

            -against-

COSITAS RICAS ECUATORIANAS CORP. d/b/a EL
PEQUEÑA COFFEESHOP; CARLOS SEGARRA;
LUZMILA SEGARRA; JUAN CARLOS SEGARRA
and LUIS CAGUANA,

                         Defendants.
-----------------------------------------------------------------X

## NEGOTIATED SETTLEMENT AGREEMENT & RELEASE

         This Negotiated Settlement Agreement and Release ("Agreement") is made by and between COSITAS RICAS ECUATORIANAS CORP. d/b/a EL PEQUEÑO COFFEESHOP; CARLOS SEGARRA; LUZMILA SEGARRA; JUAN CARLOS SEGARRA and LUIS CAGUANA, on their own behalf and on behalf of their affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, predecessors, successors and assigns, and their past and present owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, insurers, representatives, fiduciaries and agents in their individual and/or representative capacities (collectively, the "Defendants"), and GLADYS GARCIA and ELSA MAYOR ("Plaintiffs" or "Employees") on their own behalf and on behalf of their heirs, executors, administrators, successors and assigns (Plaintiffs and Defendants are hereinafter collectively referred to as the "Parties").

         **WHEREAS**, Defendants and Plaintiffs are parties to a lawsuit filed in the United States District Court, Eastern District of New York, styled *Gladys Garcia, et al. v. Cositas Ricas Ecuatorianos Corp. d/b/a El Pequeño Coffeeshop, et al.,* bearing Case No. 17-cv-03671 (FB) (RLM) (the "Civil Action");

         **WHEREAS**, in the Civil Action, Plaintiffs have asserted, among others, claims under the Fair Labor Standards Act and New York State Labor Laws seeking: unpaid minimum wage, unpaid overtime wages, spread-of-hours pay, statutory damages, attorneys' fees and costs, and interest, and statutory damages for Defendants' purported failure to provide Plaintiffs wage statements and wage notices pursuant to New York Labor Law §195 (together with all other claims Plaintiffs have asserted or could assert relating to the payment of wages and benefits the "Wage and Hour Claims");

1

**WHEREAS**, Defendants joined issue with their filing and serving of their Answer, which denied the allegations in Plaintiffs' Complaint filed in the Civil Action;

**WHEREAS**, the Defendants defended and continue to defend against all claims in the Civil Action and categorically deny the Plaintiffs' allegations asserted in the Civil Action, deny engaging in any wrongdoing whatsoever, and deny that they were or are liable or owe any wages, damages, monies or obligations to Plaintiffs with respect to the allegations or causes of action asserted in the Civil Action;

**WHEREAS**, during the course of the Parties' discovery, a material dispute has arisen regarding Plaintiffs' Wage and Hour Claims;

**WHEREAS**, Plaintiff represents, warrants and acknowledges that there are *bona fide* disputes between Plaintiff and Defendants as to whether Plaintiff is entitled to receive unpaid wages as alleged;

**WHEREAS**, Defendants and Plaintiffs mutually wish to reach a compromise of the Civil Action, resolving their disputes without the need for continued costly and protracted litigation;

**WHEREAS**, the Parties understand and agree that Defendants and any and all present and former affiliated entities, predecessor entities, successor entities and respective present and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, professional employer organizations, administrators, executors, attorneys, insurers, representatives, fiduciaries, agents, and assigns, individually and in their official capacities, deny each and every assertion of wrongdoing alleged by Plaintiffs;

**WHEREAS**, the Parties understand and agree that neither the making of this Agreement, nor anything contained herein shall, in any way, be construed or considered to be an admission by the Defendants of any liability, guilt or noncompliance with any federal, state, city, or local statute, constitution, rule, ordinance, public policy, human rights or civil rights law, wage-hour law, wage-payment law, prevailing wage law, tort law, contract, common law, or of any other wrongdoing, unlawful conduct, liability or breach of any duty whatsoever to the Plaintiffs. It is expressly understood and agreed that this Agreement is being entered into solely for the purpose of avoiding the costs of litigation and amicably resolving all matters in controversy, disputes, causes of action, claims contentions and differences of any kind whatsoever, whether known or unknown, which have been or could have been alleged by the Parties against each other;

**WHEREAS**, Plaintiffs, with full assistance and through consultation with counsel, freely and voluntarily enter into this Agreement in exchange for the promises contained herein which pertain to Defendants and the full payment due from Defendants as provided for herein;

**WHEREAS**, the Court has made no findings as to the merits of the claims or allegations contained in Plaintiffs' Complaint;

**WHEREAS**, on December 18, 2017, the Parties conducted a lengthy settlement conference with the assistance of Magistrate Judge Sanket J. Bulsara and agreed to settled their disputes as specifically provided for herein;

**WHEREAS**, the terms and conditions of this Agreement have been explained to the Parties by their counsel;

**NOW THEREFORE**, in consideration of the foregoing, the mutual promises and the Release contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged and agreed, the Parties each agree as follows:

1.      Release of Claims.  In consideration for the total payment of SEVENTY EIGHT THOUSAND SEVEN HUNDRED FORTY ONE DOLLARS AND TWENTY-FIVE CENTS ($78,741.25) (the "Settlement Amount") as set forth in Paragraphs 3.1 and 3.2 herein, Plaintiffs hereby completely, irrevocably and unconditionally releases, waives and forever discharges any and all claims, charges, complaints, judgments, or liabilities of any kind against Defendants, their heirs, executors, administrators, estate, predecessors, successors, assigns, divisions, affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities and companies, business units, committees, groups, and their current and former owners, principals, shareholders, partners, members, officers, directors, trustees, employees, attorneys, accountants, insurers, fiduciaries, representatives, and agents thereof both individually and in their business capacities (collectively referred to as "RELEASEES"), whether known or unknown, which against the RELEASEES, Plaintiffs or Plaintiffs' heirs, executors, administrators, successors, and/or assigns, may now have or hereinafter can, shall or may have from the beginning of time until the date of the complete execution of this Agreement, including, without limitation, the Wage and Hour Claims, all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.*, the New York Labor Law §§230, *et seq.*, the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, as amended, all claims for breach of contract, compensation or remuneration of any kind, unpaid wages, unpaid overtime, unpaid prevailing wages and supplemental benefits, improper deductions, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, severance pay, bonuses, deferred compensation, incentive plans, medical, dental, life or disability insurance coverage, or any other fringe benefit, claims for statutory damages and/or penalties for failing to provide proper wage notices and/or wage statements, any other claims that were or could have been asserted in the Civil Action, and any claim for attorneys' fees or costs incurred in pursuing these or any other legal claims against any of the RELEASEES.

2.      COURT APPROVAL AND EFFECTIVENESS OF SETTLEMENT

2.1      Motion for Court Approval of FLSA Settlement.

(A)      On or before January 17, 2018, Plaintiffs and Defendants in accordance with the Court's Scheduling Order entered on December 19, 2017, will file a Joint Motion seeking an Order approving the settlement of Plaintiffs' Wage and Hour Claims (the "Approval Motion").

3

(B)    In the Approval Motion, the Parties shall request that the Court approve the settlement of the Wage and Hour Claims as final, fair, reasonable, adequate, and binding on Plaintiffs, and shall dismiss the Civil Action with prejudice and without attorneys' fees or costs to any party except as specifically provided for in this Agreement.

(C)    If the Court denies the Approval Motion either in part or in its entirety, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement, if any. Should such efforts be unsuccessful and/or denied, the Civil Action will proceed as if no settlement had been attempted, and the Parties will retain all of their respective rights in these proceedings.

(D)    The Parties will work together, diligently and in good faith, to obtain expeditiously a final Order approving the settlement Agreement and dismissing this Civil Action with prejudice.

(E)    The first payment required by Paragraph "3.1(C)(1)" hereof from Defendants shall be delivered to Plaintiffs' counsel no later than the tenth day of the following month of Defendants' counsel's receipt of a final Order of the Court approving the settlement Agreement and dismissal of the Civil Action with prejudice. Each subsequent payment required by Paragraph "3.1(C)(2)" shall be paid on the tenth day of the month in the twelve succeeding months after payment of the initial lump sum payment set forth in Paragraph 3.1(C)(1). To the extent that the Court rejects the settlement Agreement, in whole or in part, and/or fails to issue an Order dismissing this Civil Action with prejudice, then Defendants shall have no obligation to provide the payments specified in Paragraph "3" hereof.

2.2    Effectiveness. This Agreement shall be effective only when: (a) this Agreement is executed by all Parties and (b) a final Order of the Court has been issued approving the terms of settlement specified in this Agreement and dismissing this Civil Action with prejudice; provided, however, that the provisions of Paragraph 2 of this Agreement shall become effective immediately upon execution of this Agreement by Defendants and Plaintiffs. The "Effective Date" shall be the first business day after the conditions precedent in this Paragraph are all satisfied.

3.    SETTLEMENT TERMS

3.1    Settlement Amount and Installment Terms – Payable to Plaintiffs.

(A)    Defendants agree to pay the Settlement Amount, which shall fully resolve and satisfy any and all amounts to be paid to Plaintiffs and any and all claims for attorneys' fees and costs in respect of this Civil Action. Defendants will not be required to pay more than the Settlement Amount under the terms of this Agreement. The Settlement Amount shall

comprise of all amounts payable under Paragraphs 3.1(B) and 3.2 of this Agreement.

(B)    From the Settlement Amount, Plaintiffs shall receive payment by separate checks as follows:

| Plaintiff | Gross Amount | Wages (from which deductions shall be made for federal, state and city taxes) | Liquidated Damages (paid by a 1099) |
|---|---|---|---|
| Gladys Garcia | $30,232.50 | $15,116.25 | $15,116.25 |
| Elsa Mayor | $24,000.38 | $12,000.19 | $12,000.19 |

(C)    The Settlement Amount shall be paid as follows:

1.    A lump sum of $10,000 payable as follows:

a. Gladys Garcia the gross sum of $5,000.00 which shall be paid as follows:

i. alleged unpaid wages in the gross sum of $2,500.00, less all applicable state, federal and local taxes and withholdings representing unpaid wages.

ii. alleged liquidated damages, statutory damages and/or interest in the gross sum of $2,500.00.

b. Elsa Mayor the gross sum of $2,500.00, which shall be paid as follows:

i. alleged unpaid wages in the gross sum of $1,250.00, less all applicable state, federal and local taxes and withholdings representing unpaid wages.

ii. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,250.00.

c. Plaintiffs' Counsel, the Gangat LLC, the gross sum of $2,500.00 as payment towards attorneys' fees and costs.

2.    The balance of the Settlement Amount after payment of the initial $10,000 installment shall be paid in twelve (12) consecutive installments as follows:

a. A sum of $5,728.44:

5

    i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

    ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

    iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

b A sum of $5,728.44:

    i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

    ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

    iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

c. A sum of $5,728.44:

    i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

    ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

    iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

d. A sum of $5,728.44:

    i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

    ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

        1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

        2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

f. A sum of $5,728.44:

i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

g. A sum of $5,728.44:

i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

h A sum of $5,728.44:

i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

i. A sum of $5,728.44:

i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

          1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

          2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

     iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

j. A sum of $5,728.44:

     i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

          1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

          2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

     ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

          1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

          2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

     iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

k. A sum of $5,728.44:

     i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

          1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

          2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

l. A sum of $5,728.44:

i. Gladys Garcia, a total sum of $2,102.71, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $1,051.36, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $1,051.35.

ii. Elsa Mayor, a total sum of $1,791.69, which is broken down as follows:

1. alleged unpaid wages in the gross sum of $895.85, less all applicable state, federal and local taxes and withholdings, representing unpaid wages.

2. alleged liquidated damages, statutory damages and/or interest in the gross sum of $895.84.

iii. Plaintiffs' counsel, Gangat PLLC, the sum of $1,834.03 as payment towards attorneys' fees and costs.

3.2    Settlement Amount - Payable as Attorneys' Fees and Costs.  From the Settlement Amount, Defendants agree to pay without any withholdings to Plaintiffs' Counsel $24,508.38, which represents reimbursement of attorneys' fees in the amount of $22,199.63 and $2,308.75 in costs incurred by Plaintiffs in connection with the Civil Action.  Such amount will be payable in equal payments in accordance with the aforementioned installment schedule and made payable to "Gangat PLLC." Plaintiffs' attorney shall provide Defendants' attorney a completed and signed Form W-9. The Parties agree no other attorneys' fees and costs to Plaintiffs' attorneys are due or owing in connection with this Civil Action.

3.3    Tax Characterization.

(A)    For tax purposes, 50% (fifty percent) of payments to Plaintiffs pursuant to Paragraph 3.1 shall be treated as back wages for which a Form W-2 shall be issued and 50% (fifty percent) of such payments shall be treated as interest and/or liquidated damages and issue without any withholdings for which a Form 1099 shall be issued. Plaintiffs shall provide to Defendants on or before the Effective Date completed and executed IRS Forms W-4 and W-9.  Plaintiffs' counsel shall provide to Defendants on or before the Effective Date a completed and executed IRS Forms W-4 and W-9.  No payment shall be issued under this Agreement until completed and executed IRS Forms W-4 and W-9 are tendered.

(B)    Payments treated as back wages pursuant to Paragraph 3.3(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholdings and each respective employee's share of FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number and/or taxpayer identification number on an IRS Form W-2.  Payments treated as interest and/or liquidated damages pursuant to Paragraph 3.3(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number and/or taxpayer identification number on an IRS Form 1099.  Payments of attorneys' fees and costs pursuant to Paragraph 3.2 shall be made to Plaintiffs' Counsel without withholding and reported on an IRS Form 1099 under the payee's name and taxpayer identification.

(C)    Defendants shall be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages pursuant to Paragraph 3.3(A).  Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Amount, and shall not be paid out of the Settlement Amount.  Defendants shall not be responsible for: (i) any payroll taxes imposed on employees, rather than employers; (ii) any taxes imposed on the portion of the payments to Plaintiff treated as payment of interest and/or liquidated damages reported on Forms 1099; or (iii) any taxes imposed with respect to the payment of attorneys' fees to Plaintiffs' Counsel under this Agreement.

(D)    Plaintiffs acknowledge and agree that, except as specified in Paragraph 3.3(C), they will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement. Additionally, Plaintiffs agree to indemnify and hold Defendants harmless for any and all federal, state, city, and local taxes, interest, charges, and

penalties that are due, may become due or are otherwise assessed against Plaintiffs at any time with respect to any portion of the Settlement Amount received by Plaintiffs, except for the employer share of the FICA tax and any federal and state unemployment tax due with respect to the amounts treated as wages as specified in Paragraph 3.3(C).

(E)    The employee portion of all applicable income and payroll taxes will be the sole responsibility of each of the Plaintiffs.

3.4    Settlement Checks.  Subject to the provisions of Paragraphs 2.1 and 3.3 above, the payments referenced in Paragraphs 3.1 and 3.2 above shall be delivered by Defendants to the Plaintiffs' counsel, via overnight mail with tracking service Gangat PLLC, 675 Third Avenue, Suite 1810, New York, New York 10017.  In the event that the payments referenced in Paragraphs 3.1 and 3.2 above are not received by the payment date described in Paragraph 2.1(E), Plaintiffs' counsel shall serve a written notice ("Default Notice") upon counsel for the Defendants, Elbert F. Nasis, Esq. and Lisa M. Casa, Esq., Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, New York 11553, enasis@forchellilaw.com, lcasa@forchellilaw.com via e-mail, and the Defendants shall have ten (10) business days from receipt of same to cure the default by making such payment.  Upon Defendants' failure to cure a default within ten (10) business days of receipt of the Default Notice, counsel for Plaintiffs shall be entitled to enter judgment against the Defendants in the amount of $78,741.25 less any sums paid on account hereunder.

4.    Representations and Warranties of Plaintiffs.  By signing this Agreement, Plaintiffs acknowledge and agree that:

(A)    They have been afforded a reasonable and sufficient period of time for review, for deliberation thereon and for negotiation of the terms of this Agreement, and they have been specifically advised to consult with legal counsel or a representative of their choice, had the opportunity to do so and have, in fact, done so by consulting with Plaintiffs' Counsel;

(B)    They have read and understand the terms of this Agreement, all of which have been fully explained to them;

(C)    They are not affected by any condition, drug, alcohol or medication that would interfere with or impair their ability to understand this Agreement;

(D)    They have signed this Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged hereunder;

(E)    The only consideration for signing this Agreement is the terms stated herein and no other promise, agreement or representation of any kind have been made to Plaintiffs by any person or entity whatsoever to cause them to sign this Agreement;

(F)    They have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim in this Civil Action, and have full authority to enter into this Agreement and the release contained in Paragraph 1 above;

(G)    Upon payment of the amounts due pursuant to Paragraph 3 above, Plaintiffs will have been paid in full for all time worked in connection with their employment with Defendants at El Pequeno Coffeeshop and Plaintiffs are owed no other amounts or forms of compensation, including, but not limited to, any wages, overtime, minimum wage, prevailing wages, supplemental benefits, spread-of-hours pay, split-shift pay, call in pay, vacation pay, sick pay, holiday pay, accrued benefits, severance, bonus, tips, and/or commission from Defendants.

5.     The Parties acknowledge that the RELEASEES do not admit that they have done anything wrong or treated Plaintiffs unlawfully.  The Parties acknowledge that Defendants agreed to this Agreement with the understanding that the terms have been reached because this settlement will: (i) avoid the further expense of costly and protracted litigation; and (ii) put the claims in this Civil Action to rest.  Nothing in this Agreement shall be deemed or read as an admission by any RELEASEE of liability or damages.

6.     If any provision of this Agreement is held by a court of competent jurisdiction to be illegal, void or unenforceable, such provision shall have no effect; however, the remaining provisions shall be enforced to the maximum extent possible.

7.      Plaintiffs represent that they will not file or pursue any complaints, lawsuits, charges, claims, demands, appeals or actions, whether currently pending or that may be filed in the future, of any kind in any forum (including, without limitation, court, administrative or governmental agency, arbitration) against the Defendants for any compensation or remuneration of any kind, wages, overtime, prevailing wages and supplemental benefits, improper deductions, accrued benefits, the Wage and Hour Claims asserted in this Civil Action, and all claims arising under The Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.,* the New York Labor Law, as amended (including all regulations and minimum wage orders), the New York Labor Law §§190-198, as amended, the New York Labor Law §§220, *et seq.*, the New York Labor Law §§230, *et seq.*, the New York Wage Hour and Wage Payment Laws, as amended, and the New York Minimum Wage Act, up to the date of this Agreement.

8.     Plaintiffs agree to not make any oral or written communication of a false or defamatory nature to any person or entity which disparages Defendants in any way. A breach of this provision shall not relieve any party of their obligations under any other provision of this Agreement.

9.     Plaintiffs understand that, to the extent permitted by law, Plaintiffs waive all rights to redress for any rejection of such future applications for re-employment by or reinstatement with El Pequeno Coffeeshop. Plaintiffs understands that if they apply to work for El Pequeno Coffeeshop at any time, the Defendants, based on this paragraph, may deny Plaintiffs employment for any position the Plaintiffs seek and that such denial will not be a violation of

14

any federal, state or municipal statute and/or common law right and will not be deemed retaliatory in any way.

10.    Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or portion thereof or interest therein, including, but not limited to, any interest in the Civil Action.

11.    **Plaintiffs are hereby advised to retain an attorney for the purpose of reviewing the Agreement, represents and warrants that they have in fact retained an attorney, Mohammed Gangat, Esq. of Gangat PLLC, for the purpose of reviewing this Agreement, know that they may be giving up important rights, have carefully read and fully considered the terms of this Agreement, have had ample opportunity to negotiate the terms of this Agreement through their attorney, have had ample opportunity to discuss the terms of the Agreement with attorneys or advisors of their own choosing, agree to all of the terms of this Agreement, intend to be bound by them and to fulfill the promises set forth herein, and voluntarily and knowingly enter into this Agreement with full understanding of its binding legal consequences and have executed this Agreement voluntarily, knowingly and with such advice from their attorney as they deem appropriate**.

12.    Enforcement of this Agreement shall be governed and interpreted by, and under, the laws of the state of New York, regardless of whether any party is, or may hereafter be, a resident of another state.

13.     No waiver, modification, or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all of the Parties, and then only to the extent set forth in such written waiver, modification or amendment subject to Court approval, if necessary.

14.    This Agreement shall be binding upon, and inure to the benefit of the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

15.    The Parties have negotiated and mutually drafted all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties entering into this Agreement, unless otherwise expressly stated.

16.    The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval to this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

17.    The Parties agree to have the Court, specifically United States District Magistrate Judge Sanket J. Bulsara retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

18.     This Agreement constitutes the entire agreement of the Parties concerning the subjects included herein.  This Agreement may not be changed or altered, except in writing and signed by all Parties.

19.     In any interpretation of this Agreement the masculine, feminine or neuter pronouns, respectively, shall include the other genders.

20.     The Parties agree that should there be any ambiguity with respect to the interpretation of this Agreement, no inference will be drawn against either party as the drafter of this Agreement.  The Agreement will be interpreted by the trier of fact, without regard to the identity of the drafter of the Agreement or any of its terms or provisions.

21.     The Parties agree not to seek any interest, fees or costs from each other and, except as provided in this Agreement, agree to be responsible for the payment of their own attorneys' fees, costs and disbursements incurred in connection with the Civil Action. This provisions does not preclude any party from seeking reasonable costs, attorneys' fees and interest in the event there is a material breach of this Agreement.

22.     This Agreement may be executed in counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument.  In the event that any signature is delivered by facsimile transmission or by e-mail delivery of an ADOBE ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page was an original thereof.

23.     This Agreement supersedes all prior agreements or understandings of any kind, whether oral and written, and represents the entire Agreement of the Parties.  This Agreement is intended to provide a memorialize the full and final compromise and settlement of all matters in controversy, disputes, causes of action, claims, contentions and differences between the Parties to this Agreement.  This Agreement represents the entire understanding of the Parties with respect to the subject matter hereof.


**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

**THEREFORE,** the Parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:

## GLADYS GARCIA

Dated: January 19, 2018

_Gladys Garcia_
Gladys Garcia

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF              )

On January ___, 2018 before me personally came to me GLADYS GARCIA, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that she executed the same.

_____
Notary Public

Mohammed A. Gangat
Notary Public. NY. Nassau Cty.
No. 02GA6348633
Exp. 10/03/20


## ELSA MAYOR

Dated: January 19, 2018

_Elsa B. Mayor_
Elsa Mayor

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF              )

On January ___, 2018 before me personally came to me ELSA MAYOR, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

Mohammed A. Gangat
Notary Public. NY. Nassau Cty.
No. 02GA6348633
Exp. 10/03/20

17

**COSITAS RICAS ECUATORIANAS CORP.**
**d/b/a EL PEQUEÑO COFFEESHOP**

Dated: January _17_, 2018

_____
CARLOS SEGARRA

Title: _Owner_____

STATE OF NEW YORK      )
                                            ) ss.:
COUNTY OF _Queens_  )

On January _17_, 2018 before me personally came to me CARLOS SEGARRA, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release on behalf of Cositas Ricas Ecuatorianas Corp. d/b/a El Pequeño Coffeeshop, and duly acknowledged to me that he executed the same.

_____
Notary Public

JOHNNY A MORAN
Notary Public - State of New York
NO. 01MO6217308
Qualified in Queens County
My Commission Expires

**CARLOS SEGARRA, INDIVIDUALLY**

Dated: January _17_, 2018

_____
CARLOS SEGARRA, Individually

STATE OF NEW YORK      )
                                            ) ss.:
COUNTY OF _Queens_  )

On January _17_, 2018 before me personally came to me CARLOS SEGARRA, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

JOHNNY A MORAN
Notary Public - State of New York
NO. 01MO6217308
Qualified in Queens County
My Commission Expires

18

**CARLOS SEGARRA, INDIVIDUALLY**

Dated: January 17, 2018

_____
CARLOS SEGARRA,
Individually

STATE OF NEW YORK )
                                         ) ss.:
COUNTY OF Queens )

On January __, 2018  before me personally came to  me CARLOS  SEGARRA,  known and
known to me to be the individual described in, and who executed the foregoing Negotiated
Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary
Public

JOHNNY A MORAN
Notary Public - State of New York
NO. 01MO6217306
Qualified in Queens County
My Commission Expires

**JUAN CARLOS SEGARRA,
INDIVIDUALLY**

Dated: January 17, 2018

_____
JUAN CARLOS SEGARRA, Individually

STATE OF NEW YORK )
                                         ) ss.:
COUNTY OF Queens )

On January 17, 2018 before me personally came to me JUAN CARLOS SEGARRA,
known and known to me to be the individual described in, and who executed the
foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me
that he executed the same.

_____
Notary
Public

JOHNNY A MORAN
Notary Public - State of New York
NO. 01MO6217306
Qualified in Queens County
My Commission Expires

**LUIS CAGUANA, INDIVIDUALLY**

Dated:  January _1 7_, 2018

_____
LUIS CAGUANA, Individually

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF _Queens_       )

On January _17_, 2018 before me personally came to me LUIS CAGUANA, known and known to me to be the individual described in, and who executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

20